1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
DENNIS W. SOMERVILLE,

Petitioner,

v.

WARDEN MARTINEZ,

Respondent.

Case No. C06-5363 RJB/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**March 2, 2006**

10
11
12
13
14
15
16

    This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to Magistrate Judge
Karen L. Strombom pursuant to 28 U.S.C. § 636 (b) and Local MJR 3 and 4.  Petitioner seeks
federal habeas corpus relief pursuant to 28 U.S.C. § 2254[1].  (Dkt. # 16).   Respondent has answered
(Dkt. # 22) and Petitioner has replied (Dkt. # 25).  This matter is now ripe for review.

17
18
19

### I.  BASIS FOR CUSTODY

20
21
22
23
24

    Petitioner is confined pursuant to the Judgment and Sentence of the Thurston County
Superior Court, based on Petitioner's conviction following a jury verdict for the crime of Rape in
the First Degree, on August 8, 2002.  (Dkt. # 23, Exh. 1 at 1).  On September 12, 2002, Petitioner
was sentenced to 300 months confinement.  (Id., Exh. 1 at 5).

25
26
27

_____

    [1]Although Petitioner has filed previous habeas corpus petitions with this Court, this is his first
petition challenging his 2002 first degree rape conviction.  This petition is, therefore, not barred as a
successive petition under 28 U.S.C. § 2244(b)(2); Ninth Circuit Rule 22-3(a).

28
REPORT AND RECOMMENDATION- 1

## II.  STATEMENT OF THE CASE

**A.**   **Statement of Facts**

Petitioner's counsel summarized the facts of Petitioner's case as follows:

On October 18, 1998, D.W. was working at the Ed Wyse Beauty Supply Store in Olympia, Washington. [RP 23-24, 30]. A customer, Susan Peterson, entered the store. [RP 31, 94]. D.W. observed the man wander through the store and eventually asked if she could assist him. [RP 34-36]. The man asked D.W. if the store carried a particular type of hairbrush, which the store did not. [RP 36, 98]. D.W. then went to ring up Peterson's purchase at the cash register. [RP 36, 98].

While D.W. was doing so, the man stepped behind the counter and told D.W. "this was a fucking robbery," "don't fuck with him," and "he had a gun." [RP 36-37, 39, 99]. The man removed all the money from the cash register and ordered Peterson to give him any money from her purse, which Peterson did. [RP 36-37, 40-43, 101].

The man then ordered Peterson into a bathroom in the store shutting Peterson inside, but stopped D.W. from going in too. [RP43-44, 108-109]. The man began fondling D.W.'s breasts. [RP 44]. Peterson, in the bathroom, heard D.W. pleading with the man, "Oh, God. Please don't." [RP 110]. The man then made D.W. place his penis in her mouth, which she did. [RP 45, 47-48]. The man ejaculated into D.W.'s mouth, and then ordered her into the bathroom with Peterson. [RP 48-49, 51, 110]. The man fled the scene. [RP 52]. Neither woman saw a gun throughout the entire incident. [RP 39-40, 73-74, 101-102, 118]. The two women left the bathroom, and D.W. ran to a nearby store and called the police. [RP 52-53, 111].

Both women described the man as a white male, in this 20s or 30s, approximately 6 feet tall, weighing approximately 200 pounds, with sandy blond hair, wearing jeans, a sweatshirt, and a baseball cap. [RP 32-33, 95-96]. The man was not caught.

D.W. was taken to the hospital where a rape kit was performed. [RP 55-57, 130-132]. Semen was detected on swabs taken from D.W.'s mouth from which a DNA profile could be obtained. [RP 174, 176-178, 229-235]. In 2000-2001, the DNA sample obtained from the incident involving D.W. was tested against Washington's DNA data bank, and a match to Somerville was made. [RP 237-250]. Pursuant to a warrant, a blood sample was obtained from Somerville and compared to the DNA taken from the incident involving D.W. [RP 168-170, 248, 250-259, 264]. Again, a match was made. [RP 250-259]. Karen Lindell, a forensic scientist with the Washington State Patrol Crime Lab, opined, when asked to the probability of a certain result in the comparisons, "that the number indicated that this profile

REPORT AND RECOMMENDATION- 2

[Somerville's] would not be seen more than once in the world." [RP 259].

(Dkt. # 23, Exh. 3).

Respondent provided the following additional facts:

When Somerville first stepped behind the counter and told D.W. that "this was a fucking robbery", "don't fuck with him", and that "he had a gun", he was wearing a sweatshirt that was a little bit baggy around the waist. RP 32, 39. Therefore, D.W. could not tell if Somerville had a gun under that sweatshirt. She thought that he might possibly have a gun and she was not going to question it. RP 39-40.

Initially, when Somerville made the statements quoted above, he spoke fairly quietly. However, as the incidents proceeded, he became more angry toward D.W. and Peterson. RP 42-43. At the time of the rape, D.W.'s mental state was as follows:

A. I was very, very panicky, I was whimpering, crying, you know, kind of going – I think your body shuts down temporarily. I just wanted to follow his orders so he would leave. I didn't want anything else to happen.

Q. What were you fearful of at that point?
A. Death. I figured if he made do that he probably could have killed me too.

RP 48-49.

(Id., Exh. 4).

**B.    Procedural History**

On September 12, 2002, Petitioner filed a Notice of Appeal.  (Dkt. # 2, Exh. 2).  On April 18, 2003, Petitioner's counsel filed a brief, raising the following sole issue for review:

Whether the trial court erred in failing to take the case from the jury for lack of sufficient evidence to prove beyond a reasonable doubt that Somerville was guilty of rape in the first degree?

(Id., Exh. 3 at 1).

REPORT AND RECOMMENDATION- 3

On June 2, 2003, Petitioner filed a Statement of Additional Grounds for Review, listing the

following additional grounds for review:

> Additional Ground 1 - Thurston County had the discretion to count prior
> convictions served concurrently as one offense or separate offenses. They failed to
> do an analysis in court pertaining to this.  State v. McCraw and State v. Lara. The
> failure to exercise discretion under RCW 9.94A.360(6)(A) is a procedural error
> under mail.

> Additional Ground 2 - Judge could not make up her mind between concurrent and
> consecutive sentence. She changed her mind four different times. She made a
> statement that I could appeal the consecutive sentence and I believe she said this
> because she could not make up her mind.

> Additional Ground 3 -

> 1.) – Failure to Adequately Prepare for trial.

> A.) – Failure to test DNA independently.  Mr. Reed did not follow my instructions to
> test it.

> B.) – Mr. Reed did not offer any scientific witnesses to argue why the DNA should not
> be admitted or as to why it should not be trusted.

> 2.) – Counselors inadequate performance.

> A.) – to cross examine the medical experts and also to present meaningful arguments
> during trial and at sentencing.

> B.) – Failed to cross examine the two victims when their stories did not match.

> C.) – Failed to make it clear to the jury that Debra told Susan (after the oral sex had
> occurred) that I had asked  her to give me oral sex, not forced, but asked her to give
> it to me.

> D.) – Failed to make it clear to the jury that when Debra went to see Dr. Paul Fleming,
> Debra told Mr. Fleming that I asked her to perform oral sex.

> D.)[sic]-Failed to cross-examine the oral sex scene.  What was said.

> 3.) – Failure to adequately investigate particular evidence.

> A.) – Failed to test DNA independently.
> Strickland v. Washington, 466 U.S. at 690.

REPORT AND RECOMMENDATION- 4

4.) – <u>Failure to object to the introduction of evidence and testimony.</u>

A.) – the certified test reports of the State Crime Lab technicians should have been excluded for violation of the notice requirements of CrR 6.13(b)(3)(i), which would render the evidence insufficient to support the convictions.

B.) – I argue that the evidence of DNA typing was improperly admitted at trial. The new DNA test (short tandem repeat) is not universally accepted and therefore inadmissible.

C.) – The failure to preserve evidence must be deemed a denial of due process resulting in a lack of a fair trial.

5.) A.- Failure to move to reconsider sentence at sentencing.

6.) A. – Counsel conceded to defendant's guilt during trial.

7.) A. – Pore [sic] performance.

8.) A. – The verbatim reports are <u>not</u> accurate. The only way the Appellate Court will hear the truth is from an original tape recording of the trial itself.

(Dkt. # 23, Exh. 5 at 1-5).

On January 13, 2004, the Washington Court of Appeals Commissioner entered a ruling affirming judgment. (<u>Id</u>., Exh. 6). On January 20, 2004, Petitioner filed a motion to modify the Court Commissioner's ruling. (<u>Id</u>., Exh. 7). On February 5, 2004, Petitioner filed a pro se Motion for Reconsideration. (<u>Id</u>., Exh. 8). On February 26, 2004, the court clerk for the Washington Court of Appeals advised Petitioner that his pro se Motion for Reconsideration was being placed in the file without action, pursuant to <u>State v. Romero</u>, 95 Wn. App. 323 (1999). (<u>Id</u>., Exh. 9). On March 11, 2004, the presiding judge for the Washington Court of Appeals entered an order denying Petitioner's Motion to Modify. (<u>Id</u>., Exh. 10).

On April 8, 2004, Petitioner filed a petition for review in the Washington Supreme Court, raising the following issues for review:

REPORT AND RECOMMENDATION- 5

1)   Whether the Court of Appeals erred in failure to reverse the case for lack of
     sufficient evidence to prove beyond a reasonable doubt that Somerville was
     guilty of rape in the first degree.

2)   Whether the Court of Appeals failed to address the clear erroneous error on
     ruling affirming judgment. Pg. 3, top of the page. (He then took Westerfield
     behind the counter, pushed her down and made her perform oral sex).

3)   Whether the Court of Appeals failed to correctly address the issue of my
     offender score being incorrectly calculated.

4)   Whether the Court of Appeals failed to give merit to my claim of ineffective
     counsel.

5)   Whether the Court of Appeals failed to address the issue of my inaccurate
     verbatim reports.

6)   Whether my due process rights were violated from failure to preserve
     'material exculpatory evidence" from the crime.

7)   Whether illegal search and seizure was committed and my constitutional
     rights were violated because Detective Steve Galagher did not stay in the
     exact bounds of the warrant.

(Id., Exh.11 at ii).

On November 30, 2004, the Chief Justice for the Washington Supreme Court entered an

order denying the Petition for Review.  (Id., Exh. 12).  On December 20, 2004, the Washington

Court of Appeals entered its mandate.  (Id., Exh. 13).  On March 16, 2005, Petitioner filed at

personal restraint petition and motion for evidentiary hearing in the Washington Court of Appeals,

Division II.  (Id., Exh. 14), in which he raises the following grounds for relief:

1)   The state failed to prove beyond a reasonable doubt that Somerville
     threatened to use a deadly weapon during the commission of the alleged rape.

2)   Ineffective assistance of counsel.

3)   Prosecutor misconduct.

4)   Conviction is invalid on its face.

REPORT AND RECOMMENDATION- 6

5)      The Court of Appeals failed to correctly address the issue of Mr. Somerville's offender score being incorrectly calculated.

6)      The failure to preserve evidence must be deemed a denial of due process resulting in a lack of a fair trial.

7)      There was an illegal search and seizure conducted by going (outside the bounds of the warrant).

8)      The State broke the chain of custody with the (evidence) sexually assault kit leaving their custody. There is no sufficient foundation to admit this evidence.

9)      Ineffective assistance of counsel.

10)     Conviction is invalid on its face.

11)     I told my attorney Paul Reed and requested to take the stand in order to testify in my defense. Which is my constitutional right to do so. Mr. Reed told me it was too late because the case had rested. Mr. Reed failed to even attempt to bring this issue to the court's attention.

12)     Substantial change in law.  Pre-Sentence investigations can no longer be used at sentencing.

(Dkt. # 23, Exh. 14, at 3, 5, 18, 20, 25, 28, 31, 35, 39, and 42).

On May 20, 2005, the State of Washington responded to Petitioner's personal restraint petition.  (Id. at Exh. 15).  On June 20, 2005, Petitioner filed his reply.  (Id., Exh. 16).  On November 30, 2005, the Acting Chief Judge for the Washington Court of Appeals entered an order dismissing Petitioner's Personal Restraint Petition.  (Id., Exh. 17).  In its order, the Washington Court of Appeals expressly held Petitioner's request for relief on approximately 24 claims were either procedurally barred or frivolous.  (Id., Exh. 17 at 1).

On January 4, 2006, Petitioner filed a motion for discretionary review in the Washington Supreme Court (Id., Exh. 18), presenting the following issues for review:

1)      My attorney Paul Reed failed to object to the introduction of evidence and testimony. He also failed to motion for suppression of the DNA lab test.

REPORT AND RECOMMENDATION- 7

2)   My Fifth and Sixth Amendment rights were violated based on my rights against self incrimination and the right to counsel.

3)   Also ineffective assistance of counsel because Paul Reed failed to object to the in court identification from D.W., and failed to motion for suppression of the identification.

4)   Mr. Reed failed to file a pre-trial discovery motion to test the alleged DNA sample from the crime scene independently.

5)   My attorney Paul Reed failed to motion the state for expert witnesses for our defense in my case.

6)   My attorney showed poor performance when failed to cross-examine the witnesses in a professional manner.

7)   In opening arguments Mr. Reed conceded my guilt to the jury.

8)   Mr. Reed failed to bring to the court's attention in my defense that I was under a "drug induced psychosis" state of mind at the time the incident occurred.

9)   Mr. (sic) failed to object to the sexual assault kit being admitted and failed to motion for suppression of this evidence, because the "chain of custody had been broken", by the sexual assault kit leaving police custody entirely.

10)  Mr. Power lied in open court to jury and judge. My attorney should have objected but failed me.

11)  The current sentencing court had the discretion to count as one offense, those offenses for which the sentences were served concurrently, but which the "original sentencing court" did not deem to be the same criminal conduct.

12)  The state failed to preserve evidence from the alleged crime scene and must be deemed a denial of due process resulting in a lack of a fair trial.

13)  There was an illegal search and seizure by going outside the bounds of the warrant.

14)  The state broke the chain of custody with the (evidence), sexual assault kit leaving their custody. There is no sufficient foundation to admit this evidence.

15)  Mr. Somerville's conviction is invalid on its face because of the illegal search and seizure and invasion of privacy.

REPORT AND RECOMMENDATION- 8

16)   My attorney Paul Reed failed to bring to the court's attention, after the case
rested that I requested to take the stand in my defense, as is my constitutional
right to do so.

(Dkt. # 23, Exh. 18).

On January 27, 2006, the Washington State Supreme Court Commissioner entered a ruling

denying review in Petitioner's case.  (Id., Exh. 19).  Petitioner then filed a motion to modify the

Washington Supreme Court Commissioner's ruling.  (Id., Exh. 20).  On April 4, 2006, the Chief

Justice for the Washington Supreme Court entered an order denying Petitioner's Motion to Modify

the Commissioner's ruling. (Id., Exh. 21).  On April 24, 2006, the Washington Court of Appeals

entered a Certificate of Finality.  (Id., Exh. 22).

### III.  ISSUES PRESENTED

Petitioner presents the following grounds for relief in his federal habeas corpus petition:

1)    There was insufficient evidence elicited at trial to prove beyond a reasonable
doubt that Somerville was guilty of Rape in the first degree.

2)   I allege that my state court conviction and/or sentence are unconstitutional, in
violation of my Fifth and Sixth Amendment right to Counsel and self
incrimination and Ineffective assistance of Counsel.

3)   I allege that my state court conviction and/or sentence are unconstitutional, in
violation of my Fifth and/or Fourteenth Amendment right to Due Process and
ineffective assistance of counsel. I contend that the lab test and results were
not provided to the defense on time, and that the certified test reports of the
State crime lab technicians should have been excluded for violation of the
notice requirements of CrR 6.13(b)(3)(i), which would render the evidence
insufficient to support the conviction.  My attorney Paul Reed failed to object
to the introduction of evidence and testimony. He also failed to motion for
suppression of the DNA lab test.

4)   The state broke the chain of custody with the evidence (sexual assault kit)
leaving their custody. There is no sufficient foundation to admit this evidence.

5)   The state failed to preserve evidence from the alleged crime scene and must be
deemed a denial of due process resulting in a lack of a fair trial.

REPORT AND RECOMMENDATION- 9

6)    There was an illegal search and seizure by going out side the bounds of the warrant.

7)    My attorney Paul Reed failed to motion the state for DNA expert witnesses for our defense in my case, even though I requested it many times.

8)    My attorney Paul Reed showed poor performance when he failed to cross examine the witnesses in a professional manner.

9)    In opening arguments my attorney Paul Reed conceded my guilt to the jury and judge.

10)   My attorney Paul Reed failed to bring to the Court's attention after the case rested, that I changed my mind and requested to take the stand in my defense, as is my Constitutional right to do so.

(Dkt. # 16).

## IV.  EVIDENTIARY HEARING

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id.

Where a Petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will not be precluded.  Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999), cert. denied, 120 S.Ct. 798 (2000) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)).  If the Petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows: (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be

sufficient to establish by clear and convincing evidence that but for constitutional error, no

reasonable factfinder would have found the applicant guilty of the underlying offense.  28 U.S.C. §

2254(e)(2).

An evidentiary hearing is not required on issues that can be resolved by reference to the state

court record."  Id. (emphasis in original).  "It is axiomatic that when issues can be resolved with

reference to the state court record, an evidentiary hearing becomes nothing more than a futile

exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (quoting 28 U.S.C. § 2255).

Petitioner is not entitled to an evidentiary hearing in this Court because, as is discussed below, there

is no indication "that an evidentiary hearing would in any way shed new light" on the grounds for

federal *habeas corpus* relief raised in the petition and the issues raised by Petitioner may be resolved

based solely on the state court record.

### V.  STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a

constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  28 U.S.C. § 2254 is explicit in that a

federal court may entertain an application for writ of habeas corpus "only on the ground that [the

petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28

U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief

does not lie for errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S.

37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated

on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined

by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination

REPORT AND RECOMMENDATION- 11

of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).   A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

## VI.  DISCUSSION

### A.    Exhaustion of State Remedies

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).   A state prisoner must exhaust state remedies with respect to each claim before petitioning for a writ of habeas corpus in federal court.  Granberry v. Greer, 481 U.S. 129, 134 (1987).   It is the petitioner's burden to prove that a claim has been properly exhausted and is not procedurally barred.  Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981).  It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made.  In order to exhaust the federal habeas claim, petitioner must have fairly presented to the state courts the substance of his federal habeas claim.  Anderson v. Harless, 459 U.S. 4, 6-7 (1982) (citations omitted).  The petitioner must present the claims to the state's highest court, even where such review is discretionary.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

A review of the state court reveals that Petitioner properly exhausted his second, fifth, sixth, seventh, eighth, ninth and tenth habeas claims as federal constitutional violations in the Washington Supreme Court.  (Dkt. # 23, Exh. 18).  Petitioner failed to properly exhaust his first, third and fourth habeas claims, however, because he failed to present such claims as federal constitutional violations in the Washington Supreme Court.  (Id.; Exh. 11).   As to his fourth habeas ground for relief

REPORT AND RECOMMENDATION- 12

(insufficient evidence as to sexual assault kit), Petitioner failed to raise that claim in any form in his petition for review during his direct appeal and only raised that claim as a state law issue in his motion for discretionary review in his personal restraint petition. (Id., Exh. 11, Exh. 18 at 6). Although he cited a Seventh Circuit case in support of his fourth claim (United States v. Kelly, 14 F.3d 1169, 1175-76 (7th Cir. 1994)), Petitioner failed to designate his claim as a federal constitutional violation.  (Id.).  Therefore, his fourth ground for relief is also unexhausted.

Because his first, third and fourth habeas claims were not presented as federal constitutional violations in the Washington Supreme Court, such claims are unexhausted. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

**B.    Dismissal of Unexhausted Claims**

Federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."  Rhines v. Weber, 125 S. Ct. 1528, 1532-33 (2005).  Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." Jefferson v. Budge, 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing Rose v. Lundy, 455 U.S. 509, 518-22 (1982)).

As Petitioner's first, third and fourth grounds for seeking federal *habeas corpus* relief have not been fully exhausted, Petitioner has presented a mixed petition containing both exhausted and unexhausted federal claims, which, in itself requires dismissal of the petition.  Before doing so, generally the Court is required to provide Petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." Id.; see also Rhines, 125 S. Ct. at 1535; Tillema v. Long, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims).  This is not so, however, where the Petitioner would be

REPORT AND RECOMMENDATION- 13

procedurally barred from returning to state court to address the unexhausted claims.[2]

As the record in this case clearly reflects, Petitioner's first, third and fourth claims are now procedurally barred, because (1) the Washington Court of Appeals entered its mandate in Petitioner's case more than one year ago, on December 20, 2004, and (2) because Petitioner previously filed a personal restraint petition in the Washington State courts. (Dkt. # 23, Exh. 13, 14, 17).   Petitioner is barred from presenting his first, third and fourth claims to the Washington Court of Appeals as federal constitutional violations by the operation of RCW 10.73.090 and 10.73.140. RCW 10.73.090 prohibits initiating a collateral challenge after more than one year has run since the petitioner's conviction became final.   RCW 10.73.140 and RAP 16.4(d) bar the filing of successive petitions and petitions raising new claims absent a showing of good cause.   Because Petitioner cannot show good cause, the state court will deny any petition he now files under RCW 10.73.140. Shumway v. Payne, 136 Wn.2d 383, 398-99, 964 P.2d 349 (1998)[3].

**C.**     **Petitioner Cannot Show Cause and Prejudice Or Fundamental Miscarriage of Justice**

Unless it would result in a "fundamental miscarriage of justice", a petitioner who procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To show "cause", the petitioner must show that some

_____

[2]Petitioner moved to stay his petition so that he might exhaust his state court remedies.  (Dkt. # 20, filed October 20, 2006) .  Petitioner asked the Court that if he had not exhausted his state court remedies on any issue, that it stay his petition so that he may seek those remedies through the state. (Id.).  The Court denied the motion to stay pending complete briefing from the parties on all issues including the issue of exhaustion.  (Dkt. # 27).

[3]For example, while Petitioner's claim of insufficiency of evidence is excluded from the one year limitation of RCW 10.73.140 (See RCW10.73.100(4)), Petitioner's first claim is still barred by operation of RCW 109.73.140, which prohibits the filing of successive petitions on the same ground.

REPORT AND RECOMMENDATION- 14

objective factor, external to the petitioner, prevented compliance with the state's procedural rule. Id. at 753.   "The fact that [a petitioner] did not present an available claim or that he choose to pursue other claims does not establish cause." Martinez-Villareal v. Lewis, 80 F.3d 1301, 1306 (9th Cir. 1996).

A petitioner can demonstrate "cause" by showing interference by state officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986).  A petitioner cannot demonstrate cause to excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct. McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992).   A petitioner's own inadequacies and lack of expertise in the legal system do not excuse a procedural default. Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 907-09 (9th Cir. 1986).

"[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Wood v. Hall, 130 F.3d  373, 379 (9th Cir. 1997) (quoting Murray v. Carrier, 447 U.S. 478, at 496). "To meet this manifest injustice exception, [the petitioner] must demonstrate more than that 'a reasonable doubt exists in the light of the new evidence.'" Wood, 130 F.3d at 379 (quoting Schlup v. Delo, 513 U.S. 298, at 329 (1995)). The petitioner must also "make a stronger showing than that needed to establish prejudice," Schlup, 513 U.S. at 327. "[T]he petitioner must show that is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id.

Petitioner has not provided the court with any evidence of cause and prejudice or a fundamental miscarriage of justice. Because he cannot excuse his procedural default, his first, third

REPORT AND RECOMMENDATION- 15

and fourth habeas claims are not cognizable in this federal habeas corpus proceeding.

**D.**     **Petitioner's Sixth Ground for Relief is Barred by Stone v. Powell, 428 U.S. 465 (1976)**

Petitioner asserts that his Fourth Amendment right against illegal search and seizure was violated when the detective in his case "went out side the bounds of the warrant and had Washington WSO MSC medical draw six tubes of blood on December 7, 2001, which violates my Fourth Amendment right." (Dkt. 16 at Ground 6). This habeas claim is barred from consideration by the case of Stone v. Powell, 428 U.S. 465 (1976).

The Fourth Amendment assures the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." Powell, 428 U.S. at 482 (quoting U.S. Const. Amend. IV). Implementation of the exclusionary rule at trial and on direct appeal discourages law enforcement officials from violating the Fourth Amendment. Powell, 428 U.S. at 492. However, where the petitioner has not been denied a fair opportunity to raise Fourth Amendment claims in the state court, federal habeas review is unavailable. Id. at 494.

Absent a showing that the state denied a petitioner a full and fair opportunity to litigate his Fourth Amendment claim, the federal court is precluded from enforcing the exclusionary rule through a writ of habeas corpus, even where the state has failed to raise the issue in the district court. Woolery v. Arave, 8 F.3d 1325, 1328 (9th Cir. 1993), cert. denied, 511 U.S. 1057, 114 S. Ct. 1623 (1994). It is not necessary that a petitioner actually litigate the Fourth Amendment claim in state court. Powell bars habeas corpus review of such claims so long as the state provides the process whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, regardless of whether or not the defendant employs those processes. Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978); Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994), cert. denied, 513 U.S. 1183, 115 S. Ct. 1175 (1995).

REPORT AND RECOMMENDATION- 16

As part of his personal restraint petition, Petitioner requested an evidentiary hearing, but it is unclear for which claim he was seeking such a hearing.  However, when dismissing his petition, the Washington Court of Appeals denied his request for a reference hearing, based on the presentation of "no non-frivolous arguments."  (Dkt. # 23, Exhs. 14 and 17 at 16).  As it is not necessary that a petitioner actually litigate the Fourth Amendment claim in state court, so long as he had the opportunity to litigate his claims, the Court recommends that Petitioner's sixth ground for relief should be barred by the application of <u>Powell</u> and dismissed on that basis.

**E.      Petitioner's Second Ground For Relief Is Without Merit As He Admitted Identity**

Petitioner contends that his Fifth and Sixth Amendment rights to counsel, self incrimination and effective assistance of counsel were violated based on a courtroom identification in an unscheduled lineup from outside the courtroom in which two witnesses viewed Petitioner sitting as the only male in sight at a table without his attorney's knowledge, presence, and without Petitioner's permission.  (Dkt. # 16 at Ground 2).

In challenging the identification, the petitioner must show "that the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." <u>Neil v. Biggers</u>, 409 U.S. 188, 196 (1972) (quoting <u>Stovall v. Denno</u>, 388 U.S. 293, 301-02 (1967)). Whether the identification was unduly suggestive, however, "must be determined 'on the totality of the circumstances.'" <u>Neil</u>, 409 U.S. at 196.  "[T]he admission of evidence of a show up without more does not violate due process." <u>Id.</u> at 198. Absent a showing that the identification was unreliable, the evidence is properly admitted even though the confrontation was impermissibly suggestive. <u>Id.</u> at 199; <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114-17 (1977).

To support a claim of ineffective assistance of counsel, a petitioner must satisfy a two-part

REPORT AND RECOMMENDATION- 17

standard.  First, the petitioner must show that counsel's performance was so deficient that it "fell

below an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 686

(1984).  Second, the petitioner must show that the deficient performance prejudiced the defense so

"as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at

687.  Unless the defendant's showing satisfies both parts of the analysis, "it cannot be said that the

conviction . . . resulted from a breakdown in the adversary process that renders the result

unreliable."  Id.  Under Strickland's second prong, to prove prejudice, petitioner must establish a

"*reasonable probability* that, but for counsel's unprofessional errors, the results of the proceeding

would have been different."  Woodford v. Visciotti, 537 U.S. 19, 22 (2002) (per curiam) (emphasis

in the original) (citing Strickland, 466 U.S. at 694).

Respondent argues that this claim fails on its face as Petitioner conceded in the Washington

state courts to having engaged in oral sex with the victim.  Given that concession, claims of

prejudice from an unscheduled "lineup" from outside the courtroom is meritless as his concession

left no doubt as to his identity.

The Washington Court of Appeals found that this claim lacked merit:

> Petitioner raises the following identity-evidence claims: (1) ineffective
> assistance of counsel for failure to object to the victim, prior to her testimony,
> observing Petitioner in the courtroom and to the victim's subsequent in-court
> identification of Petitioner; . . . .
>
> .   .   .
>
> There are many reasons that these claims do not entitle petitioner to relief;
> some are flawed for multiple reasons.  But all 12 of these claims lack a showing of
> prejudice or harm, a threshold requirement for personal restraint petitions.  *Rice*, 118
> Wn.2d at 884; *Cook*, 114 Wn.2d at 812; *Hews*, 99 Wn.2d at 85-87.  Each of these
> claims involves the purportedly improper admission of evidence tending to prove that
> Petitioner as the man who had sexual intercourse with the victim. Petitioner cannot
> establish prejudice from the admission of such evidence because, in his briefing to this
> court, he concedes that he committed the robbery and had genital to mouth contact

REPORT AND RECOMMENDATION- 18

1

2

with the victim, arguing only that the victim consented to this act.

(Dkt. # 24, Exh. 17 at 7-8) (Emphasis added.)

3

4

5

6

7

Under 28 U.S.C. § 2254(d) "unreasonable application" clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the state-court decision applied Strickland incorrectly." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citing Bell v. Cone, 535 U.S. 685 (2002)).

8

9

10

11

12

13

In light of Petitioner's concession that he had engaged in oral sex with the victim, Petitioner cannot show prejudice from the admission of evidence tending to show that he was the man who had sex with the victim.  Accordingly, Petitioner is not entitled to federal habeas relief on his second ground as the decision by the Washington Court of Appeals was not contrary to or an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court.

14

15

**F.    Petitioner's Fifth and Seventh Grounds For Relief Was Must Be Denied As Petitioner Conceded His Identity**

16

17

18

19

In his fifth habeas claim, Petitioner contends that the state failed to preserve evidence from the crime scene, thus denying him a fair trial.  (Dkt. # 15 at Ground 5).  In his seventh ground for relief, Petitioner contends that his attorney failed to motion the state for DNA expert witnesses in his defense even though he requested it many times.  (Id. at Ground 7).

20

21

22

23

24

25

26

27

For evidence to be of constitutional materiality, it must "possess an exculpatory value that was apparent *before* the evidence was destroyed . . ." California v. Trombetta, 467 U.S. 479, 104 S. Ct. 2528, 2534, 81 L. Ed. 2d 413 (1984)(emphasis added).  The Due Process Clause does not require "the State to preserve evidentiary material of which no more can be said than that it *could* have been subjected to tests, the results of which *might* have exonerated the defendant." Arizona v. Youngblood, 109 S. Ct. 333, 337-338 (1988)(emphasis added) (absent bad faith on the part of the

28

REPORT AND RECOMMENDATION- 19

police, failure to preserve potentially useful evidence does not constitute a denial of due process of law; no due process clause violation when state fails to use particular scientific test as investigative tool and no constitutional duty to conduct any particular test).

The Washington Court of Appeals rejected Petitioner's claim that the state failed to preserve evidence:

> Finally, Somerville claims the State failed to preserve the blood sample he provided. The record does not support this claim. Detective Steve Galagher of the Olympia police department testified he served a search warrant on Somerville authorizing a blood draw on December 7, 2001. Galagher provided a copy of the warrant to Somerville. Chet Mackaben, evidence technician for the Olympia police department, testified that a tube of blood was drawn from Somerville on December 7, 2001 and received into evidence the same day. The blood was transported to the Washington State Patrol crime lab on December 10, 2002 for DNA testing. The blood came back from the crime lab on March 6, 2001 and was placed in the Olympia police department refrigerator. Mackaben testified he brought the blood to court on the day of trial in substantially the same condition as when it was first received.

(Id., Exh. 6 at 6-7).

Respondent argues that Petitioner's fifth and seventh grounds for relief must be denied because Petitioner fails to establish prejudice from admission of DNA evidence which tended to prove that he was the man who had sexual intercourse with the victim when he openly conceded that he committed the robbery and had oral sex with the victim, thereby eliminating any issue as to his identity. Thus, in light of Petitioner's concession, it would have served little purpose for his attorney to have obtained such DNA expert witnesses.

When adjudicating his personal restraint petition, the Washington Court of Appeals determined that Petitioner's fifth and seventh grounds for relief lacked merit:

> At trial, the State presented extensive DNA evidence identifying petitioner as the source of the semen swabbed from the victim's mouth; the State also presented eyewitness identification testimony. Petitioner raises a large number of issues related

REPORT AND RECOMMENDATION- 20

to the admission of evidence that tended to prove that he was the person who engaged in genital to mouth sexual contact with the victim. He raises these issues both as ineffective assistance of counsel and as substantive claims.

Petitioner raises the following identity-evidence claims: (1) ineffective assistance of counsel for failure to object to the victim, prior to her testimony, observing Petitioner in the courtroom and to the victim's subsequent in-court identification of Petitioner; (2) admission of the test swabs and DNA tests because police purportedly framed petitioner by tainting the test swabs from the victim with semen obtained from the petitioner while he was jailed on a different charge in Clark County; (3) ineffective assistance of counsel for failing to pursue suppression on this basis; (4) admission of the test swabs and DNA test because Clark county authorities purportedly swabbed petitioner's mouth while investigating a different crime and these swabs somehow tainted the Thurston County samples; (5) ineffective assistance of counsel for failing to pursue suppression on this basis; (6) admission of the sexual assault kit despite supposedly inadequate chain of custody; (7) ineffective assistance of counsel for failing to pursue suppression on this basis; (8) purported failure to preserve as evidence swabs from the victim's mouth and gum that was in the victim's mouth; (9) purported police seizure of more tubes of blood from defendant for DNA testing than a search warrant authorized; (10) ineffective assistance for not pursuing suppression of the DNA evidence on this basis; (11) admission of DNA evidence because prison authorities purportedly obtained DNA samples from petitioner illegally; and (12) ineffective assistance for not objecting to the DNA evidence on this basis.

There are many reasons that these claims do not entitle petitioner to relief; some are flawed for multiple reasons, but all 12 of these claims lack a showing of prejudice or harm, a threshold requirement for personal restraint petitions. *Rice*, 118 Wn.2d at 884; *Cook*, 114 Wn.2d at 812; *Hews*, 99 Wn.2d at 85-87. Each of these claims involves the purportedly improper admission of evidence tending to prove that Petitioner was the man who had sexual intercourse with the victim. Petitioner cannot establish prejudice from the admission of such evidence because, in his briefing to this court, he concedes that he committed the robbery and had genital to mouth contact with the victim, arguing only that the victim consented to this act.

In his reply brief, Petitioner states that "[t]he oral sex occurred [sic] because after the robbery I made the statement 'will you do down on me' and she did with out [sic] me forcing her." Petitioner's Reply Brief at 3. He also states that

The truth is that I did not force [victim's] head down at anytime….It simply is not what happened. I never touched [victim] until after she was performing oral sex. [Victim] openly lies in court about the [sic] how the oral sex started. She knows it, I know it, god [sic] knows it.

1

2
       Petitioner's Reply Brief at 11.

3
        Petitioner now acknowledges the sex act, but specifically denies that he

4
ejaculated during its commission: "I told Mr. Reed [trial lawyer] that I never
ejaculated at any time during [sic] the encounter with [victim]." Petitioner's

5
Opening Brief at 9. From this he argues that the DNA evidence must be somehow
tainted or flawed. **Regardless of the Petitioner's recollection, the evidence in**

6
**question was only relevant to prove his identity as the man who had sexual**

7
**contact with the victim. Petitioner admits he was that man**. He therefore cannot
demonstrate prejudice from the admission of the identity-related evidence, and the

8
12 above claims are rejected.

9
(Id., Exh. 17 at 7-9) (emphasis added) (internal footnotes omitted).

10
       In light of Petitioner's concession that he committed the robbery and had oral sex with the

11

12
victim, the decision by the Washington Court of Appeals rejecting Petitioner's claims that the state

13
failed to preserve DNA evidence and that his attorney failed to motion the state for DNA expert

14
witnesses constituted a denial of due process, was not contrary to or an unreasonable application of

15
clearly established federal law, as determined by the U.S. Supreme Court.  The record reflects that

16
such evidence was only relevant to prove his identity as the man who had sexual contact with the

17
victim and Petitioner had already conceded to that fact.  Accordingly, Petitioner is not entitled to

18
federal habeas relief regarding those claims.

19

20
**G.**    **Petitioner's Eighth, Ninth and Tenth Grounds for Relief Must be Denied as Trial**
      **Counsel Did Not Provide Ineffective Assistance of Counsel**

21

22
       Petitioner's Eighth, Ninth and Tenth Grounds for relief are claims of ineffective assistance

23
of counsel.  As noted above, Petitioner must satisfy the two-part standard of Stickland, to support

24
a claim of ineffective assistance of counsel.  First, the petitioner must show that counsel's

25
performance was so deficient that it "fell below an objective standard of reasonableness."  Id. at

26

27
686.  This burden is highly demanding, as the defendant must prove he was denied a fair trial by the

28
REPORT AND RECOMMENDATION- 22

gross incompetence of counsel.  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382 (1986).  Second, the petitioner must show that the deficient performance prejudiced the defense so "as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 687.  Unless the defendant's showing satisfies both parts of the analysis, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  <u>Id</u>.  Because the petitioner must satisfy both prongs of the <u>Strickland</u> test, a court need not address both prongs if the petitioner makes an insufficient showing of one prong.  <u>Id</u>. at 697.  Judicial review of an attorney's performance is "highly deferential and doubly deferential when it is conducted through the lens of federal habeas."  <u>Yarborough v. Gentry</u>, 124 S. Ct. 1, 4 (Oct. 20, 2003).

Under the first prong of the <u>Strickland</u> test, the question is whether counsel's assistance was reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct. <u>Strickland</u>, 466 U.S. at 690. To succeed under the first prong, the petitioner must show the attorney's conduct "reflect[s] a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney." <u>United States v. Vincent</u>, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S. 838 (1985). There is a strong presumption that counsel's performance fell within the wide range of reasonable assistance.  <u>Strickland</u>, 466 U.S. at 689.

Under <u>Strickland's</u> second prong, to prove prejudice, petitioner must establish a "*reasonable probability* that, but for counsel's unprofessional errors, the results of the proceeding would have been different." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 22 (2002) (per curiam) (emphasis in the original) (citing <u>Strickland</u>, 466 U.S. at 694).  However, sheer outcome determination is not sufficient to make out a Sixth Amendment violation: a proper prejudice inquiry focuses on whether

REPORT AND RECOMMENDATION- 23

counsel's errors or omissions rendered the proceeding fundamentally unfair or the result unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id. at 372.

Petitioner claims his attorney showed poor performance when he failed to cross-examine the witnesses in a professional manner.  Specifically, Petitioner claims that D.W. and S.P.'s stories "allege crime had differences and conflicts with each others testimony.  My attorney failed to make this clear to the jury and should have cross examined them about but failed to do so."  (Dkt. # 15 at Ground 8).  Petitioner also claims that his attorney conceded his guilt to the jury and judge, thus providing ineffective assistance of counsel as well as due process violation.  (Id. at Ground 9).  And, Petitioner claims that his attorney failed to bring to the court's attention after the case rested he wanted to testify.  (Id. at Ground 10).

The court must strongly presume that counsel made all significant decisions in the exercise of reasonable professional judgment.  Strickland, 466 U.S. at 688.  A strategic decision to pursue a particular defense theory and forgo other theories, is presumed reasonable and virtually unchallengeable.  Id. at 690-91; Bell v. Cone, 122 S. Ct. 1843, 1853-54 (2002); Anderson v. Calderon, 232 F.3d 1053, 1087-90 (9th Cir. 2000), cert. denied, 122 S. Ct. 580 (2001).  Each of Petitioner's claims was previously reviewed and rejected in the state courts.

The Washington Court of Appeals rejected Petitioner's claim:

> Somerville contends that counsel failed to cross-examine Peterson and Westerfield about inconsistencies in their testimony. Peterson was in the bathroom and did not witness the rape. She did testify that she heard Westerfield plead with Somerville, stating, "Oh, god, plead don't," two times. Westerfield had previously testified that she had said "I don't want to" and "Please don't make me do that" when Somerville initially told police that he has *asked* her to perform oral sex (not demanded it), and his attorney should

have questioned her about that. Whatever term Westerfield may have used originally, the description of events given by her and Peterson clearly indicated that Somerville forced her to perform oral sex.

(Dkt. # 23, Exh. 6 at 5).

There is nothing in the record or the state court decision to lead this Court to conclude in its independent judgment that the state court applied <u>Strickland</u> incorrectly.  Petitioner demonstrates neither deficient performance nor prejudice based on the failure of his attorney to have further questioned Ms. Westerfield.  As noted by the state court, the description of events clearly indicated she was forced to perform oral sex regardless of the words she may have used when originally describing the event.  Because the decision by the Washington Court of Appeals as to Petitioner's eighth ground for relief was neither contrary to nor an unreasonable application of clearly established federal law, he is not entitled to federal habeas relief regarding that claim.

In his ninth ground for relief, Petitioner contends that his trial attorney conceded his guilt to the jury and judge.  Opening statements were not transcribed.  (Dkt. # 23, Exh. 23, Verbatim Report of Proceedings, Volume I at 16).  When addressing this claim on the merits, the Washington Court of Appeals noted the lack of a transcript of the opening statements. The Court of Appeals, however, went on to determine that even if Petitioner's attorney had conceded guilt in his opening statement, Petitioner still had not demonstrated prejudice:

> Petitioner claims that his trial counsel conceded guilt in his opening statement by telling the jury that the question was only which degree of rape petitioner was guilty of. This court's review of this issue is hampered by the lack of a transcript of the opening statements. When, as here, a petitioner identifies a portion of the underlying proceedings as the evidence for his claim of error, the State has a duty to provide this court with the record of that proceeding. *See* RAP 16.7(a)(2)(i), 16.9. This court thus cannot tell what Petitioner's lawyer said during opening statement. Even assuming that his counsel made such a statement, petitioner has not demonstrated prejudice. Petitioner seems to assume that such a concession would be per se prejudicial; this is incorrect. *State v. Silva*, 106 Wn.App. 586, 596-597, 24 P.3d 477 (2001). A partial concession is neither an unauthorized guilty plea nor prejudicial

error when the evidence on the conceded point is strong and when the concession is made for the tactically sound reason of gaining credibility with the jury to avoid conviction on a more serious charge. *Silva*, 106 Wn. App. 596-97. And a lawyer "need not consult with a client before making such a tactical move." *Silva*, 106 Wn. App. at 596.

This court's review of the trial record reveals that the evidence that Petitioner had been the man who engaged in sexual intercourse with the victim in a store after committing a robbery was strong; the DNA evidence appears to have been compelling and clear. And as noted, Petitioner now concedes the issue. By contrast, it appears that the evidence of the use of a deadly weapon, while legally sufficient, was less strong. The court had instructed the jury on second degree rape as a lesser offense.

Although this court does not have a transcript of opening statements, it has reviewed the closing argument of Petitioner's counsel. In his closing argument, Petitioner's counsel acknowledged the strength of the DNA-based identification evidence and made a tactical decision to argue strongly that the State had not proved a threat with a weapon. In an effort to prevent conviction of a greater crime, he argued that, at most, the State had proved second degree, rather than first degree rape. Even while acknowledging the detailed evidence of identity, Petitioner's counsel did not concede this issue completely and did not concede that his client had committed any crime. His final argument to the jury was an effort to explain away the DNA evidence linking the defendant to the crime. While we do not know what Petitioner' lawyer said during his opening statement, based on his closing argument, he chose a reasonable trial tactic in the face of the overwhelming identification evidence in an effort to avoid a first degree rape conviction. Defendant thus has not met his burden of proving prejudice.

Petitioner relies on *United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991). This court has reviewed both that case and *Wiley v. Sowders*, 647 F.2d 642 (6th Cir. 1981), another federal case finding *per se* prejudicial error in a lawyer's concession; both are also discussed in *Silva*. These cases can be distinguished, however, as both involved *repeated* and *complete* concessions in *closing argument*; indeed, the lawyers in those cases affirmatively told the jurors that there was no reasonable doubt as to the defendant's guilt on the only charged crimes. In holding that the defendant need not demonstrate prejudice, the *Swanson* court emphasized that closing argument is a critical state created stage of a criminal case and that conceding *complete* guilt during that critical stage created a *non*-adversarial process. 943 F.3d 1072-75. Petitioner claims his lawyer made a limited concession, with an evident and obvious tactical purpose, during opening statement. His lawyer's closing argument was not even a complete concession on the identity issue. *Swanson's* holding does not govern this claim.

(Dkt. # 23, Exh. at 10-12).

REPORT AND RECOMMENDATION- 26

Although the state court did not have a verbatim record of opening arguments before it, this Court cannot say that its decision as to Petitioner's ninth ground for relief was contrary to or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court.   The state court reviewed the record and noted that in the face of overwhelming identification evidence, Petitioner's counsel did not concede this issue completely and did not concede that his client had committed any crime.  In his final argument to the jury, Petitioner's counsel attempted to explain away the DNA evidence linking Petitioner to the crime.  The state court's conclusion based on counsel's closing argument, that he chose a reasonable trial tactic in the face of overwhelming identification evidence in an effort to avoid a first degree rape conviction, was a reasonable one.  Accordingly, Petitioner's ninth claim for relief should be denied.

Finally, Petitioner argues that his attorney failed to bring to the court's attention that he had changed his mind and requested to take the stand in his own defense. (Dkt. # 16 at Ground 10). The trial court record directly refutes Petitioner's claim:

> MR. POWERS: Your Honor, it's the State's understanding that the defense intends to rest without presenting testimony. And I would ask that the record reflect whether that is the case.
>
> THE COURT: Yes. When asked in open court, Mr. Reed, you indicated that you wished to present witnesses. Is that in fact your intention?
>
> MR. REED: That is, Your Honor. I've spoken to Mr. Somerville himself about his right to speak or not to speak several times through the history of this case, including yesterday and today and his final decision was not to take the stand today.
>
> THE COURT: Mr. Somerville, after consultation with your attorney, <u>is it your desire not to testify in this matter?</u>
>
> THE DEFENDANT: <u>Yes, Your Honor.</u>
>
> THE COURT: All Right.

REPORT AND RECOMMENDATION- 27

(Dkt. # 23, Verbatim Report of Proceedings, Volume II at 724) (emphasis added).

The Washington Court of Appeals adjudicated the claim as follows:

> Petitioner claims that he was denied his constitutional right to testify at his trial; he states that his lawyer refused to honor his request to do so. The State's response includes a colloquy during which the prosecutor, the defense lawyer, the Petitioner, and the court discussed whether Petitioner planned to testify. After Petitioner's lawyer told the court that he and Petitioner had discussed his right to testify several times and that Petitioner had decided not to testify, the trial judge spoke directly to the Petitioner: "Mr. Somerville, after consultation with your attorney, is it your desire not to testify in this matter?" Petitioner replied, "Yes, Your Honor." Clearly, then, the trial record directly refutes Petitioner's claim. In his reply, Petitioner claims that he changed his mind and decided he wanted to testify the day after the defense rested. He asserts that he told his lawyer that he now wanted to testify and that his lawyer refused to seek court permission to re-open the defense case to allow the defendant to testify. This court need not determine whether these facts would justify relief, as defendant has failed to provide any affidavit supporting his non-record factual claims. Defendant fails to meet the burden imposed by *Rice*.

(Dkt. # 23, Exh. 17 at 15).

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. Harris v. New York, 401 U.S. 222, 225 (1971).  In this case, Petitioner clearly articulated to his counsel and to the state court that he was aware of his constitutional right to testify in his own behalf and that he chose not to exercise that right.  The decision of the state courts as to Petitioner's claim that he later changed his mind is not unreasonable or contrary to clearly established federal law, as there is nothing in the record to support such a claim.  Accordingly, the Court finds that Petitioner is not entitled to federal habeas relief and that his tenth claim for relief should be denied.

## VII.  CONCLUSION

Based on the foregoing discussion, the Court should **DENY the petition**.  A proposed

REPORT AND RECOMMENDATION- 28

order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **March 2, 2007,** as noted in the caption.


DATED this 5th day of February, 2007.




Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 29